# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

A.S.,

                                            Plaintiff,

            -v.-

                                                              1:21-CV-620
CITY SCHOOL DISTRICT OF ALBANY, et al.,                       (BKS/ATB)

                                            Defendants.

REBECCA J. HOULDING, ESQ., Attorney for Plaintiff
S.A., Proposed Intervenor, Pro Se
FRANK W. MILLER, Attorney for Defendant Jeffrey Honeywell
GREGG T. JOHNSON, ESQ., et al., Attorneys for all other Named Defendants

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

Presently before the court is the motion of S.A.,[1] appearing pro se, to intervene in

this action as an additional defendant. (Dkt. No. 28).[2] This matter has been referred to

me for Report and Recommendation by the Honorable Brenda K. Sannes, United States

---

[1] S.A. has been identified by her initials in this action, purportedly to help protect the anonymity of her son, who is accused of sexually harassing A.S. while both were minors, and who is not identified by name in plaintiff's complaint. (See Compl. at 5, n.2). The plaintiff ("A.S.") and other "victims" and "witnesses," who were minors at the time of the incidents described in the complaint, are also referred to with pseudonyms in plaintiff's complaint.

[2] S.A.'s submission (Dkt. No. 28) also opposed plaintiff's motion to proceed under a pseudonym in this action (Dkt. Nos. 5, 14), which the named defendants had already opposed in previous submissions. (Dkt. Nos. 18, 19). The court planned to address plaintiff's motion at the Rule 16 conference, which was recently adjourned without date, based on the filing of a motion to dismiss the complaint by the named defendants other than defendant Honeywell. (See Dkt. Nos. 35, 36). This Report-Recommendation will address only S.A.'s motion to intervene. As the court previously ordered, pending a final decision on plaintiff's motion to proceed under a pseudonym, the parties shall not file, on the public docket in this action, any documents identifying, by name, the plaintiff or others referenced by initials or pseudonyms in the complaint, or others who were minors at the time of the conduct alleged in the complaint. (See Dkt. No. 21).

District Judge, pursuant to 28 U.S.C. § 636 (b) and Local Rules N.D.N.Y. 72.3(c).

(Dkt. No. 37).  Defendant Jeffrey Honeywell[3] filed a brief letter in support of S.A.'s

motion to intervene (Dkt. No. 32) and the other named defendants[4] notified the court

that they do not oppose the motion (Dkt. No. 31).  Plaintiff has opposed S.A.'s motion

to intervene.  (Dkt. No. 33).  S.A. filed a brief reply, which supplemented her

opposition to plaintiff's motion to proceed under a pseudonym.  (Dkt. No. 34).

## I.    **Background**

Plaintiff's complaint, filed on May 27, 2021, alleges that her rights under Title IX

of the Education Amendments of 1972 ("Title IX") and various civil rights were

violated while she was a minor attending Albany High School, from which she

graduated in June of 2018.  (Compl., Dkt. No. 1).  Plaintiff contends that, as a result of

the defendants' inappropriate responses to her complaints of sexual and other

harassment by a male high school student ("MA")[5], she was the victim of harassment,

disparate treatment, and retaliation based on sex under Title IX (*id*., First Cause of

---

[3] According to the complaint, defendant Honeywell, at all times relevant to this action, was an attorney for the City School District of Albany ("CSDA") and its Board of Education. (Compl., ¶ 13).

[4] The other defendants named in the complaint (the "CSDA defendants") were the CSDA and its Board of Education ("BOE"); Lori McKenna, Assistant Superintendent; Dale Getto, the Acting Principal of the Albany High School; and Anne Savage, the Vice President of the CSDA BOE.  (Compl., ¶¶ 8-12).

[5] The submissions of S.A. and the named defendants refer to the other student as "MA," while the complaint refers to him as "the Perpetrator," ostensibly to avoid implicitly identifying him by using his initials.  Given the defendant's objection to the plaintiff's label for this other student, the court will refer to him as MA, except when quoting plaintiff's complaint.

2

Action), as well as violations of her constitutional rights to equal protection (*id.*,

Second Cause of Action), freedom from retaliation under the First Amendment (*id.*,

Third Cause of Action), and due process (*id.*, Fourth Cause of Action).

S.A. is the mother of MA and was a member of the CSDA BOE from 2012

through June 2018, serving as its president between January 2017 and June 2018.

(Compl., ¶¶ 3, 19-22). Although not named as a defendant, the complaint includes

numerous allegations referencing S.A. (sometimes as the "Board President")–some less

relevant to the claims in the complaint (e.g., Compl., ¶¶ 32, 33, 137, 165) than others

(e.g., Compl., ¶¶ 224, 284, 347, 358-59). Plaintiff summarized her view of S.A.'s role

in the violations of her Title IX and constitutional rights as follows:

> S.A. – an attorney herself – would . . . threaten Plaintiff's family, as well as the
> family of another witness, with litigation, and further, file or assist in filing two
> "cross-complaints" against victims of the Perpetrator's inappropriate behavior,
> retaliating against them for complaining about the Perpetrator. [There was a]
> culture of fear of retaliation created by S.A. in her position on the School Board,
> which was known and condoned by Defendants, as evidenced by administrators
> warning student victims and witnesses that S.A. would be angry with them or
> was angry with them, or otherwise discouraging them from pursuing complaints.
> This contributed to – at a minimum – victims who were too afraid to report the
> Perpetrator's abuse.

(Compl., ¶ 34).

S.A. summarizes why she should be allowed to intervene in this action as follows:

> Plaintiff has crafted a false and malicious complaint that puts proposed
> intervenor at the center of every invented wrong, yet does not name her as a
> defendant. This is a blatant attempt to prevent proposed intervenor from
> defending against plaintiff's scurrilous allegations and revealing plaintiff's lies.
> Allowing intervention will ensure that the Court and jury are presented with all

the facts and that plaintiff is not permitted to use this meritless lawsuit to satisfy her ulterior motive of continuing her malicious vendetta.

(S.A.'s Mem. of Law at 1, Dkt. No. 28-37).

S.A. also attempted to refute the allegations of the complaint in this action regarding S.A. and her son by filing, on June 1, 2021, a complaint against plaintiff and her parents in state court, using their full names. (*See* Dkt. No. 18-2).[6] S.A.'s supporting affidavit describes "the prima facie tort case I filed in the Supreme Court, New York County against [plaintiff] and her parents . . . for the malicious and vindictive campaign they have waged continuously against me since fall 2016, when they irrationally blamed me for plaintiff not being able to obtain a science-based International Baccalaureate ("IB") Diploma." (S.A. Affidavit, ¶ 11, Dkt. No. 28-2). Among other things, S.A. accuses plaintiff of orchestrating a protest when S.A. spoke at the Albany High School graduation in June 2018, during which numerous students stood, turned their backs to S.A., and disrupted her speech–an incident which ultimately received coverage in the local newspaper. (S.A. Affidavit, ¶¶ 94-106).[7] S.A. argues that, if she is not allowed to intervene in the plaintiff's action, it "could have a

---

[6] The parties to the state court action are currently litigating whether the state court complaint should be redacted such that A.S. and other alleged victims of sexual misconduct are identified with pseudonyms. (*See* Dkt. No. 33-2))

[7] While plaintiff's complaint includes allegations regarding the protest, she denies involvement in planning it, personally standing during S.A.'s speech, or being involved in the subsequent publicity. (Compl., ¶¶ 354-57). Plaintiff alleges that, after the incident, S.A. taped a letter to her family's mailbox threatening litigation for plaintiff's alleged malicious and false statements to the newspaper and threatening to contact the university where plaintiff had been accepted to advise them of her "conduct." (Compl., ¶ 358).

preclusive effect" on S.A.'s state court action against plaintiff and her family. (S.A. Affidavit, ¶ 11).

In opposing S.A.'s motion to intervene, plaintiff argues that S.A. "has failed to establish . . . a specific tangible interest in this litigation, or one that would be impacted by Plaintiff obtaining a jury verdict in Plaintiff's favor." (Pl.'s Mem. of Law at 1, Dkt. No. 33). S.A.'s belief that "she is an important player in the events at issue, and has a personal interest in the case outcome . . . fails to provide a basis to intervene as of right or by permission." (*Id*.) Plaintiff further argues:

> [E]ven if she could identify an interest within the meaning contemplated by [Fed. R. Civ. P. 24], the current Defendants would adequately represent her. Finally, her involvement would serve to complicate this litigation, and would allow her to have access to discovery to which she would otherwise not be entitled – such as Plaintiff's medical records.

(*Id.*)

Since the parties filed their papers relating to S.A.'s motion to intervene, the CSDA defendants have filed a motion to dismiss plaintiff's complaint. (Dkt. No. 35). As discussed further below, that filing is relevant to the question of whether the current named defendants can adequately protect any "interest" that S.A. may have in this actions that would otherwise support intervention under Rule 24.

## II.  **Generally Applicable Law**[8]

Federal Rule of Civil Procedure 24 provides for intervention as of right or by

---

[8] The statement of applicable law largely quotes Judge Sannes's opinion in *Hill v. Cty. of Montgomery*, No. 9:14-CV-933 (BKS/DJS), 2018 WL 2417839, at *4 (N.D.N.Y. May 29, 2018).

permission of the court.  Rule 24(a), which governs intervention as of right, provides:

> On timely motion, the court must permit anyone to intervene who:
> (1) is given an unconditional right to intervene by a federal statute; or
> (2) claims an interest relating to the property or transaction that is the subject of
> the action, and is so situated that disposing of the action may as a practical
> matter impair or impede the movant's ability to protect its interest, unless
> existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a).  Rule 24(b) governs permissive intervention and states:  "(1) On

timely motion, the court may permit anyone to intervene who: (A) is given a

conditional right to intervene by a federal statute; or (B) has a claim or defense that

shares with the main action a common question of law or fact."  Fed. R. Civ. P.

24(b)(1).

The Second Circuit has explained that before a court grants "intervention as of

right or by permission, 'an applicant must (1) timely file an application,[9] (2) show an

interest in the action, (3) demonstrate that the interest may be impaired by the

disposition of the action, and (4) show that the interest is not protected adequately by

the parties to the action.'"  *Floyd v. City of New York*, 770 F.3d 1051, 1057 (2d Cir.

2014) (*quoting "R" Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238,

240 (2d Cir. 2006)).  The Circuit has "underscored that a '[f]ailure to satisfy any one of

these four requirements is a sufficient ground to deny the application.'"  *Id.* (*quoting*

*"R" Best Produce*, 467 F.3d at 241).

---

[9] There is no issue in this case with respect to the timeliness of S.A.'s motion to intervene.

In exercising its discretion to grant or deny permissive intervention under Rule 24(b), the court must also consider "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."  Fed. R. Civ. P. 24(b)(3).  Additional relevant factors under Rule 24(b) include "whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented."  *Citizens Against Casino Gambling in Erie Cty. v. Hogen*, 417 F. App'x 49, 50 (2d Cir. 2011).  "While accepting 'as true the non-conclusory allegations of the motion[,]' courts applying Rule 24 'must be mindful that each intervention case is highly fact specific and tends to resist comparison to prior cases.'" *Kamdem-Ouaffo v. Pepsico, Inc.*, 314 F.R.D. 130, 134 (S.D.N.Y. 2016) (*quoting Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Ams.*, 262 F.R.D. 348, 352 (S.D.N.Y. 2009)).

## III.  <u>Analysis</u>

The court notes first that the circumstances under which S.A. seeks to intervene in this action are quite atypical.  The parties have not cited a single similar case involving an effort of an individual accused of participation in discrimination or civil rights violations in a civil complaint, but not named as a defendant in the action, to intervene *as a defendant* so that she could refute the allegations against her.  The court has found just one example of an analogous situation in a federal civil action–*Roe v. Lincoln-Sudbury Reg'l Sch. Dist.*, No. CV 18-10792, 2019 WL 5685272 (D. Mass. Oct.

31, 2019).  The female student plaintiff in *Roe* sued her school district and three school officials for, *inter alia*, gender discrimination and civil rights violations relating to the district's inadequate response to a sexual assault of plaintiff by two male fellow students.  *Id.* at *2.  "John Doe," one of the accused perpetrators of the alleged assault, "moved to intervene . . . asserting that he needs to do so in order to protect his rights under Title IX and his reputational interests."  *Id.*  The district court denied Doe's motion to intervene under Fed. R. Civ. P. 24, finding that he did not have "a claim of an interest relating to the subject of the action that will be impaired absent the intervention."  *Id.* at *3.  The district court concluded:

> . . . regardless of the outcome of Roe's claim, Doe remains free to file a separate action regarding his own rights under the statute.  Furthermore, as a non-party to this action, Doe runs no risk of facing prejudicial use of issue or claim preclusion by a future litigant. . . .  Doe also refers to protection of his reputation.  The substance of Roe's claims is the school's response to her allegation of assault. The perpetration of the assault is certainly a factual issue underlying the claims in this case, but the focus of the legal claims is on the school's response, not the assault itself.

*Id.* at *3 & n.1 (citations omitted).[10]

S.A.'s decision to try to intervene as a defendant is perhaps better understood

---

[10] The student perpetrator, Roe, would likely not have faced liability under the gender discrimination or civil rights claims asserted by plaintiff Doe.  However, Doe also asserted claims of negligent and intentional infliction of emotional distress, on which Roe might have been potentially liable if he had been allowed to intervene.  *Id.* at 2.  S.A., in both this case and her state action, is clearly attempting, in part, to defend the reputation of her son.  However, S.A. obviously stands in a different position than a student accused of sexual misconduct, and the allegations against her in this action are primarily based on her position as President of the BOE. While the *Doe* case is obviously distinguishable in some respects and is not binding authority in this circuit, the court finds that it is instructive with respect to S.A.'s motion to intervene.

given the substance and timing of her motion in this action, following the filing of her

state court action. On June 1, 2021, S.A. filed her "prima facie tort" action in state

court against plaintiff and her parents, using their full names, "for the malicious and

vindictive campaign they have waged continuously against [her]." (S.A. Affidavit, ¶

11; Dkt. No. 18-2). Apparently, not satisfied with the state court action for addressing

the allegations of plaintiff in her May 27, 2021 complaint in this action, S.A. filed her

motion to intervene on July 6, 2021. By that time, the three-year statute of limitation

on any Title IX or civil rights claim against S.A. likely had passed, and she asserted, in

her proposed answer to plaintiff's complaint, a Third Affirmative Defense based on the

statute of limitations.[11]  (See Dkt., No. 28-38 at 26). S.A. filed her affidavit (Dkt. No.

28-2), as well as a proposed answer to the complaint (Dkt. No. 28-38), both of which

refuted the allegations of plaintiff in detail. Tellingly, S.A. also opposed, at length,

plaintiff's motion to proceed anonymously in this action (S.A.'s Mem. of Law at 7-23),

seeking to have all of S.A.'s counter-allegations against plaintiff and her family

publicly directed at them by name. S.A. did so, with the apparent belief that she would

not be vulnerable to any liability as a defendant in this action based, at least in part, on

---

[11] The statute of limitations for Title IX violations and Section 1983 claims in New York
is three years. *See, e.g., Curto v. Edmundson*, 392 F.3d 502, 504 (2d Cir. 2004). The last alleged
acts of discrimination or civil rights violations involving S.A. appear to have occurred in June
2018, shortly after the high school graduation ceremonies. (Compl., ¶¶ 355-359; S.A. Affidavit,
¶¶ 94-106). Plaintiff contends that S.A. implicitly entered into an agreement reached in late 2020
between plaintiff and the named defendants to toll the statute of limitations in this action, but
S.A. states that she was not included in that agreement. (Pl.'s Mem. of Law at 13 n.4; S.A.
Affidavit, ¶¶ 6, 117-121).

her statute-of-limitations defense.

Given the very unusual background of this case and the fact that "each intervention case is highly fact specific,"[12] much of the case law cited by both sides, involving more typical scenarios for motions to intervene, may not be particularly instructive. The court will now address the various factors that should be considered under Rule 24, relying heavily on the limited case law involving situations more analogous to the unusual circumstances of this case.

## A.    Existence of a Cognizable Interest in the Action that May be Impaired without Intervention

The Second Circuit has "made it clear that, for an interest to be 'cognizable' under Rule 24, it must be 'direct, substantial, and legally protectable.' In other words, '[a]n interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule.'" *Floyd v. City of New York*, 770 F.3d at 1060 (citations omitted).

As discussed earlier, S.A. sought to intervene in this case after the statute of limitations as to any claim in the action against her would have passed, when she no longer had any meaningful exposure to liability in this action. Her purported interests in this action are to defend her reputation and that of her son, to protect her ability to continue to practice as an attorney in New York, and to avoid prejudicing her position

---

[12] *See, e.g., Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Ams.*, 262 F.R.D. at 352.

in her state court lawsuit by refuting what she claims are "scurrilous" allegations in plaintiff's complaint. (S.A. Affidavit, ¶¶ 10-12).

To the extent S.A. expresses concerns that the outcome of plaintiff's action could jeopardize S.A.'s position in her state lawsuit, she does not establish a "cognizable interest" that warrants intervention. While plaintiff's complaint includes a lot of extraneous allegations, the focus of the claims is on the failure of various school district officials to properly address plaintiff's claims of sexual harassment by MA. The focus of S.A.'s action is very different–that plaintiff and her family maliciously tried to defame S.A. and her son because they blamed S.A. for ending the International Baccalaureate ("IB") program that plaintiff wanted to pursue. The fact that the two actions involve some overlapping factual issues, most of which need not be explicitly decided in connection with plaintiff's action, does not support intervention. *See, e.g., Del Col v. Rice*, No. 11-CV-5138, 2014 WL 1834983, at *7 (E.D.N.Y. May 7, 2014) ("To the extent that the . . . motion [to intervene] is grounded in a concern that issues that are litigated during the course of this proceeding will reference [the proposed intervenors], or may overlap with issues that were litigated in their breach of contract claim, having an interest in the outcome of issues that are incidental to the central claims of the instant case is insufficient to justify intervention as of right.").

S.A. provides no support for the suggestion that the ultimate resolution of plaintiff's actions, in which S.A. was not a named defendant, could have "preclusive"

res judicata or collateral estoppel effects on S.A.'s state court action.  (S.A.'s Mem. of Law at 4).  *See Roe v. Lincoln-Sudbury Reg'l Sch. Dist.*, 2019 WL 5685272, at *3 ("as a non-party to this action, [the person moving to intervene] runs no risk of facing prejudicial use of issue or claim preclusion by a future litigant");  *Del Col v. Rice*, 2014 WL 1834983, at *7 (the proposed intervenor's speculative assertions that "'the Court may res judicata the transactions at issue in this law suit, affecting any separate action I may otherwise have,' . . . are insufficient to establish that their interests will be impaired if they are not permitted to intervene").  S.A. cites a case for the proposition that intervention in an action may be justified when an adverse decision could have a "stare decisis effect" in other contexts.  (S.A.'s Mem. of Law at 4, *citing New York Pub. Int. Rsch. Grp., Inc. v. Regents of Univ. of State of N. Y.*, 516 F.2d 350, 352 (2d Cir. 1975).  However, the cited case involved a vastly different situation than this action–a legal challenge by consumers to a state regulation prohibiting the price of prescription drugs from being advertised–and the court allowed intervention by a pharmaceutical association and three individual pharmacists because the ultimate decision with respect to the validity of the regulation could impact their economic interests.

    To the extent S.A. claims that her ability to continue to practice law in New York could be impaired if she is not allowed to defend herself in plaintiff's action, that very speculative concern does not give rise to a cognizable interest under Rule 24.  S.A.

suggests that the plaintiff's actions could establish that S.A. "engaged in a coverup of sexual harassment," an alleged "violation of [her] oath of office as a Public Officer," which could jeopardize her legal career. (S.A.'s Mem. of Law at 4; S.A. Affidavit, ¶ 12). Given that S.A. is not a named defendant in plaintiff's action, even a finding against the named defendants on the Title IX or civil rights claims would not involve an explicit finding that S.A. engaged in such a coverup. S.A.'s purported concern that the outcome of plaintiff's action could result in her disbarment or other adverse impacts on her legal career, is clearly "contingent upon the occurrence of a sequence of events" and does not meet the requirements of Rule 24. *Floyd v. City of New York*, 770 F.3d at 1060.

The remaining "interest" that S.A. relies upon in her motion to intervene is her purported need to defend her reputation and that of her son from the allegations in plaintiff's complaint. The court would first note that S.A.'s claim that she is cast as the "pivotal" "Svengali" "at the center of every invented wrong" in plaintiff's complaint is a considerable exaggeration. (S.A.'s Mem. of Law at 1, 4). There is no question that plaintiff's prolix complaint makes numerous direct allegations against S.A., some of which are marginally, if at all relevant to plaintiff's claims. However, the claims in the complaint also emphasize the alleged sexual and other harassment by MA and the failure of several other school district officials, who were directly involved in the day-to-day operations of the high school, to properly address plaintiff's complaints and

concerns.

As noted previously, the complaint makes allegations against MA and S.A. that are not particularly relevant to plaintiff's ultimate claims. For example, plaintiff's allegations regarding how S.A. reacted to plaintiff's role in reporting alleged "academic dishonesty" by her son, would appear to have little bearing on her claims of discrimination, harassment, and retaliation based on sex. (Compl., ¶¶ 91, 96-102, 104-06, 126-28, 137).[13] Nonetheless, S.A. is determined to refute such tangential allegations in this action (S.A. Affidavit, ¶¶ 26-31), notwithstanding the fact that she is suing the plaintiff and her parents over such allegations in her "prima facie tort" action in state court (Dkt. No. 18-2, ¶¶ 51-71).

The few courts who have addressed the issue have generally ruled that intervention by non-parties in a civil action for the purpose of defending one's reputation against allegations in the complaint does not satisfy the requirements of Rule 24, and have often held that such reputational interests are better addressed in separate litigation. *See, e.g., Roe v. Lincoln-Sudbury Reg'l Sch. Dist.*, 2019 WL 5685272, at *2-3 (discussed above); *In re New York City Policing During Summer 2020 Demonstrations*, No. 20-CV-8924, 2021 WL 1666860, at *2, 4 (S.D.N.Y. Apr. 28,

---

[13] To the extent plaintiff addressed that topic in connection with her First Amendment retaliation claim, S.A.'s primary alleged adverse action occurred in February 2017 (Compl., ¶ 137), and the statute of limitations on that conduct would have expired well before plaintiff's action was filed in May 2021 or the plaintiff and the named defendants entered into a tolling agreement in late 2020.

2021) (the asserted "'reputational'" interest of police union members in intervening in an action that asserted that certain police tactics during protests were unconstitutional was "'too indirect and insubstantial to be legally protectable'") (citing *Floyd v. City of New York*, 770 F.3d at 1060).  Nor does a non-party have a cognizable interest in intervention if they assert that they are well situated to point out misrepresentations made in the action.  *See, e.g., High Farms, LLC v. King*, No. 16-CV-736, 2021 WL 1137995, at *13 (E.D.N.Y. Mar. 25, 2021) (while the proposed intervenor "may have an 'interest,' colloquially speaking, in how this litigation proceeds, she lacks a legally protectable interest in the conduct of this litigation, such as correcting any misrepresentations made to the Court . . . or preventing [parties] from 'continuing to exploit this litigation for . . . personal advantage.'") (*citing N.Y. News, Inc. v. Kheel*, 972 F.2d 482, 486 (2d Cir. 1992) (holding that "remote interest in a streamlined, abuse-free judicial system is not a 'significantly protectable interest' within the meaning of Rule 24(a)(2)")).

The Second Circuit's opinion in *Kheel* is instructive on the question of whether S.A. has a cognizable interest in this action under Rule 24.  The publisher of the New York Daily News commenced an action against several unions and its officials representing striking newspaper workers, alleging a conspiracy to induce the publisher to settle the strike on favorable terms or force it to sell the Daily News to an investment group when union officials had a financial interest in such a sale.  *Kheel*, 972 F.2d at

15

484.  Although not named as a defendant, the complaint alleged that Kheel was heavily

involved in the scheme to coerce the publisher to sell the Daily News.  *Id*. at 484-85.

Kheel moved to intervene, for the purpose of pursuing a motion to strike, from

the complaint, the allegations against him.  *Id.* at 485.  When the action was settled,

Kheel continued to seek intervention, to pursue Rule 11 sanctions against the plaintiff

for making baseless allegations against him.  *Id.* at 485-86.  Although the district court

denied Kheel motion to intervene based on his apparent interest in protecting his

reputation, Kheel claimed, on appeal, that his purpose was to satisfy his professional

obligation as an attorney to inform the court about abuse of the judicial process in the

litigation.  *Id*.  The Second Circuit rejected "Kheel's contention that a motion for Rule

11 sanctions based on personal knowledge of false allegations in a complaint

concerning the movant is sufficient to satisfy the requirements of Rule 24(a)(2)."  *Id*. at

486-87.

Kheel obviously pursued different procedural tactics than did S.A. in connection

with his motion to intervene.  However, the reasoning of the Second Circuit supports

this court's conclusion that S.A.'s purpose of refuting plaintiff's allegations about her

and her son, despite her pursuit of the same objective in her state court action, does not

constitute a cognizable interest justifying intervention under Rule 24.

### B.     The Adequacy of the Representation of the Named Defendants

The Second Circuit has articulated the scope of the burden on a proposed

intervenor to show that her interests in a lawsuit may not be adequately protected by the existing parties:

> While the burden to demonstrate inadequacy of representation is generally speaking "minimal," *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n. 10, . . . (1972), we have demanded a more rigorous showing of inadequacy in cases where the putative intervenor and a named party have the same ultimate objective, *Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 98 (2d Cir.1990); *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978). Where there is an identity of interest, as here, the movant to intervene must rebut the presumption of adequate representation by the party already in the action. *See Brennan*, 579 F.2d at 191.

*Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179-80 (2d Cir. 2001).

Even if S.A. had a cognizable interest that supported intervention in this action, the court concludes that she has not established the named defendants will not adequately protect any such interest. As noted above, the CSDA defendants have filed a motion to dismiss the entirety of plaintiff's complaint. In seeking to intervene as a defendant, S.A. shares the same ultimate objective–dismissal of plaintiff's claims. *See High Farms, LLC v. King*, 2021 WL 1137995, at *13, 14 (E.D.N.Y. Mar. 25, 2021). In dismissing a motion to intervene in a contract action, the court in *High Farms* stated:

> Proposed Intervenor [("Gwenda)"] and Defendant share the same objective in this suit: dismissal. . . . Therefore, there is a presumption that Defendant adequately represents Gwenda's interests. This presumption attaches even though Gwenda and Defendant may have different reasons for their shared objective. *See Wash. Elec. Coop., Inc.*, 922 F.2d at 98 ("a putative intervenor's interest is not inadequately represented merely because its motive to litigate is different from that of a party to the action" . . .

*Id.* (*citing, inter alia, United States v. Yonkers Bd. of Educ.*, 902 F.2d 213, 218 (2d Cir.

1990) ("If disagreement with an actual party over trial strategy . . . were sufficient basis

for a proposed intervenor to claim that its interests were not adequately represented, the

requirement would be rendered meaningless.")

S.A. provides the following "key" examples of how her interests in the action

may diverge from those of the named defendants:

> District defendants may be dismissed from this lawsuit based on the narrow issue
> of notice, without ever proving the falsity of plaintiffs allegations; they might
> seek settlement based on public policy considerations that are irrelevant to
> proposed intervenor, who has not been affiliated with the District in any way
> since June 30, 2018 and, as a private citizen, is concerned for herself and her
> child; . . .[14]

(S.A.'s Mem. of Law at 5). However, the CSDA defendants have not negotiated a

settlement with plaintiff, they have moved to dismiss her complaint in its entirety. In

doing so, they do not rely solely on narrow issues, such as notice to the school district

of the alleged harassment of plaintiff by MA. Rather they vigorously argue, for

example, that plaintiff's allegations do not state a claim of sexual harassment by S.A.'s

son. (Motion to Dismiss ("MTD"), Mem. of Law at 28-29, Dkt. No. 35-9).

Throughout their brief, the CSDA defendants challenge the accuracy and relevance of

plaintiff's allegations about S.A. and her son. The defense brief repeatedly echoes

S.A.'s claims in her state court action that plaintiff's family is motivated in pursuing

---

[14] S.A. also claimed that her interests in this action diverged from those of the named
defendants based on her disagreement "with how the District resolved her child's Dignity for All
Students ('DASA') complaints of bullying and retaliation by plaintiff and two of her friends."
(S.A.'s Mem. of Law at 5-6). This disagreement is clearly a collateral issue in this action, which
S.A. can better address in her state court action.

this action by their "obsession with the destruction of MA and the vilification of his mother." (*Id*. at 5, 22 & n.10, 23 n.11, 27, 28-29). The named defendants also vigorously opposed plaintiff's motion to proceed anonymously in this action, citing, *inter alia*, S.A.'s state court action against plaintiff and her family. (See, e.g., Def.'s Mem. of Law in Opposition to Plaintiff's Motion to Proceed Under Pseudonym at 12-13, Dkt. No. 18; Dkt. No. 18-2 (S.A.'s state court complaint)). In short, the named defendants are more than adequately presenting S.A.'s position with respect to plaintiff's claims and are seeking the same ultimate objective–dismissal of this action.

### C.    Other Factors Relevant to Permissive Intervention

The factors that support denial of S.A.'s motion for intervention as of right under Rule 24(a) also militate against a grant of permissive intervention under Rule 24(b). In addition, the court concludes that allowing S.A. to intervene would cause undue delay and would disrupt the efficient litigation of this action.

In arguing in favor of permissive intervention, S.A. argues that she "has a deep knowledge of the actual facts in this case and the extensive evidence disproving plaintiff's sexual harassment claim, which 'will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.'" (S.A.'s Mem. of Law at 6-7 (citation omitted)). However, S.A. is clearly determined to defend her honor and that of her son by exhaustively disputing the merits of all the factual allegations in plaintiff's

complaint, even when they could be succinctly challenged as gratuitous and extraneous to plaintiff's claims. While the plaintiff's prolix complaint may have opened the door to disputes over collateral issues, the named defendants have demonstrated a better ability to focus on the key issues in defending this action than the pro se proposed intervenor. If S.A. is allowed to intervene as a defendant in this action, the court will be more likely to get bogged down in discovery disputes and mini-trials regarding collateral issues such as whether MA engaged in academic dishonesty as plaintiff alleged, or whether the school district appropriately handled MA's DASA counter-complaint against plaintiff and two friends.

S.A.'s lengthy opposition to plaintiff's motion to proceed anonymously, notwithstanding the thorough challenge to that motion by the named defendants, highlights the risk that her involvement in this action will also likely lead to duplicative motion practice. S.A.'s submissions reflect her own apparent obsession to win a public relations war of attrition with plaintiff and her family. If that battle must be fought in the courts, it should proceed in the context of S.A.'s state court lawsuit, not in this action.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that S.A.'s motion to intervene in this action (Dkt. No. 28) be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have

fourteen (14) days within which to file written objections to the foregoing report.

Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT**

**TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE**

**APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing

*Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C.

§ 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.


Dated: August 11, 2021

Andrew T. Baxter
U.S. Magistrate Judge